UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>SALISHA BAKER,<br><br>    Debtor.<br>_____<br><br>SALISHA BAKER,<br><br>    Appellant,<br><br>v.<br><br>WAYNE COUNTY TREASURER,<br><br>    Appellee. | Case No. 17-12870<br>Honorable Laurie J. Michelson<br><br>Bankr. No. 15-42041 |

**OPINION AND ORDER DENYING MOTION FOR STAY PENDING APPEAL [8]**

---

Salisha Baker wanted to secure a steady stream of retirement income. So she purchased a number of rental properties at a tax auction and started a property-management business. But things did not go as planned. The income from the properties did not cover her costs, and she ran up sizeable debts to the Wayne County Treasurer and the Detroit Water and Sewerage Department, among other creditors.

She filed for bankruptcy. In the Chapter 13 bankruptcy proceeding, Baker was able to "cram down" some debts and negotiate a payment plan. She remains timely

on her plan payments. But in 2016, an illness kept her from work and reduced her income. As a result, she failed to pay post-petition property taxes for 2015 and 2016. Wanting to initiate tax foreclosures, the Wayne County Treasurer moved to lift the automatic stay that accompanied Baker's bankruptcy filing. The bankruptcy court found cause to lift the automatic stay. Baker moved to stay the bankruptcy court's ruling pending an appeal. The bankruptcy court denied Baker's motion.

Baker now asks for the same relief from this Court.

## I.

In 2015, Salisha Baker filed a voluntary petition for Chapter 13 bankruptcy protection. (R. 5, PID 24–26.) At the time, Baker had a job working for a company called MGIC. (R. 5, PID 64.) To generate a consistent stream of retirement income, she purchased several residential properties at tax auction and started a property-management business. (R. 7, PID 359; R. 8, PID 391.) Eventually, she came to own at least five properties in the City of Detroit. (R. 8, PID 391.) But the rental income and Baker's wages from MGIC did not cover her costs to operate the properties. (R. 5, PID 66–70; *see also* R. 5, PID 137.)

Baker's debts drove her to seek bankruptcy protection. Baker has numerous creditors. At the time she filed her petition, Baker owed the Wayne County Treasurer $49,024.10 in unpaid property taxes (for years 2010 to 2014). (R. 5, PID 45.) She also owed the Detroit Water and Sewerage Department for unpaid water bills. (R. 5,

PID 51–52.) Chapter 13 protection allowed Baker to "cram down" (i.e. reduce) the property-tax and utility-bill debt, and she negotiated a payment plan with her other creditors. (R. 5, PID 178–79, 183.) Her plan, covering a 60-month term, requires Baker to make $675.00 payments every two weeks. (R. 5, PID 183.)

For two years, Baker made timely payments. (R. 5, PID 312, 323.) But in 2016, an illness forced Baker to take a medical leave from MGIC. (R. 8, PID 392.) Her reduced income affected her ability to pay both her plan payments and her 2015 and 2016 property taxes. (*Id.*) Baker opted to make payments to her plan and did not pay property taxes for any of her properties for 2015 or 2016. (*Id.*) By operation of state law, failing to pay property taxes created a lien on the properties. *See* Mich. Comp. Laws § 211.40.

To understand what happened next requires an understanding of some bankruptcy law. Filing a voluntary petition for bankruptcy protection operates as an automatic stay of virtually any action against the debtor by virtually any creditor. *See* 11 U.S.C. § 362(a). The automatic stay affords some breathing room for the debtor to effect a reorganization and prevents a disorderly rush by creditors to collect. *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977). A creditor may, however, petition the bankruptcy court to lift the automatic stay "for cause." 11 U.S.C. § 362(d)(1).

Returning to Baker's situation, while the automatic stay did not prevent Wayne County's liens from attaching, *see* 11 U.S.C. § 362(b)(18), it did initially prevent Wayne County from enforcing those liens through tax foreclosure. *See* 11 U.S.C. § 362(a)(4). So the Wayne County Treasurer filed a motion in the bankruptcy court to lift the stay. (R. 5, PID 250–54.) The Treasurer argued that Baker's failure to pay post-petition property taxes amounted to "cause" sufficient to lift the stay. (R. 5, PID 261–62.) In response, Baker argued that her health concerns and timely plan payments to the trustee counseled against lifting the stay. (R. 5, PID 338.) The bankruptcy court agreed with the Treasurer. (R. 5, PID 268–270.)

Baker then asked the bankruptcy court to stay its decision pending an appeal, but it declined to do so. (R. 8, PID 393.) Baker filed her appeal. (R. 1.) To prevent the impending tax foreclosure of her properties, Baker again seeks to stay the bankruptcy court's lifting of the automatic stay.

**II.**

The Federal Rules of Bankruptcy Procedure allow a party to request a stay from the district court. *See* Fed. R. Bankr. P. 8007(b). A party must first seek relief in the bankruptcy court, and if denied, a party may then petition for review in the district court. Fed. R. Bankr. P. 8007(a)(1). A stay pending an appeal is similar to a preliminary injunction, so the factors that govern a decision to issue an injunction

4

likewise govern a decision to issue a stay. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). Those factors are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

In analyzing the four factors, the Court engages in an individualized balancing act. *See id.* at 1229 (holding that the factors are not "prerequisites that must be met" but rather "considerations . . . to be balanced"). The Supreme Court reasons that the first two factors—likelihood of success and irreparable harm—weigh the most. *See Nken*, 556 U.S. at 434. Parties must show greater than a "possibility" of both. *Id.* at 434–35. And they are closely related. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other."). Finally, if after weighing the first two factors, the scales tip decisively in one direction or the other, the Court need not consider the remaining factors. *See Jones v. City of Monroe*, 341 F.3d 474, 476 (6th

Cir. 2003) ("[I]f fewer factors are dispositive of the issue" the Court need not make factual findings with respect to each factor); *Nken*, 556 U.S. at 435.

This Court balances the four factors within the abuse of discretion framework. *See City of Akron v. Akron Thermal, Ltd. P'ship*, 414 B.R. 193 (N.D. Ohio 2009); *In re Target Graphics, Inc.*, 372 B.R. 866, 870 (E.D. Tenn. 2007); *see also Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558, 567 (3d Cir. 2015); *In re Zick*, 931 F.2d 1124, 1126 (6th Cir. 1991). The Court must ask "whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *In re M.J. Waterman & Assocs.*, 227 F.3d 604, 608 (6th Cir. 2000) (citing *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982)). Within the abuse of discretion framework, the Court gives fresh review to legal conclusions, but reviews factual findings for clear error. *Jones*, 341 F.3d at 476.

### III.

### A.

The Court begins with the first factor: "likelihood of success on the merits." Baker bears the burden of showing "more than [a] mere possibility of success on the merits." *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 35 (6th Cir. 1992). Baker makes two attempts to satisfy this factor. Both come up short.

**1.**

Baker first argues the bankruptcy court erred in finding cause to lift the automatic stay. Baker cites *In re Nichols*, 440 F.3d 850 (6th Cir. 2006), for the proposition that "[t]he failure to make [plan] payments [to creditors], standing alone . . . does not usually constitute 'cause' to modify or lift the stay, especially where failure to pay resulted from circumstances beyond the debtor's control, such as illness or job loss." 440 F.3d at 856 (citing 11 U.S.C. § 362(d)(1)); (R. 9, PID 420). In *Nichols*, the debtors filed for bankruptcy under Chapter 13. One of their debts included an installment loan on a truck from lender Americredit. The approved Chapter 13 plan called for the debtors, over a five-year period, to pay the trustee, not Americredit, a certain amount each week. The trustee would then distribute the money to creditors based upon priorities set out in the plan. But Nichols lost his job and stopped making the payments required under the plan. As a result, the trustee did not make regular payments to the creditors during this time. In response, Americredit moved to lift the automatic stay. *Id.* The bankruptcy court agreed to do so unless Nichols paid the outstanding amount in two weeks or modified his Chapter 13 plan. *Id.* at 856.

Baker is correct to note that the Sixth Circuit believed a debtor's failure to make plan payments to a creditor, on its own, does not amount to cause. *Id.* at 856 ("The failure to make payments, standing alone, however, does not usually constitute

'cause' to modify or lift the stay, especially where failure to pay resulted from circumstances beyond the debtor's control, such as illness or job loss.") She is also correct to note that at least one bankruptcy court cites *Nichols* for that proposition. *See In re Vista Int'l Dev.*, No. 08-12582, 2008 Bankr. LEXIS 5139, *14–15 (Bankr. W.D. Tenn. Oct. 23, 2008) (citing *Nichols* and reasoning that a debtor's post-petition default on an obligation, absent more, is not generally cause for lifting the stay).

But these cases are not squarely on point because a failure to make plan payments on pre-petition obligations is not the same thing as a failure to pay post-petition property taxes. Bankruptcy courts recognize that distinction, and reason that a failure to pay post-petition taxes *may* amount to cause. As the *Vista* court explained:

> Because the issue of whether or not "cause" exists in a case is a highly subjective inquiry, there is no set formula courts can use to make the determination. Some circumstances courts have found to satisfy the "cause" requirement of § 362(d)(1) include "lack of insurance, commission of waste, *failure to pay post-petition taxes respecting the property in which the creditor has an interest*, or the violation of government statutes or ordinances;" significant default under a lease, failure to pay state and federal taxes, malfeasance by the debtor(s) that was tantamount to an abuse of the bankruptcy process; and failure to comply with a court order . . . Very often a party seeks to have the automatic stay lifted when a debtor defaults on an obligation; however, "the failure to make payments, standing alone, . . . does not usually constitute 'cause' to modify or lift the stay. . . ."

*In re Vista Int'l Dev.*, 2008 Bankr. LEXIS 5139 at *14-15 (emphasis added; citations omitted); *see also In re Schewe*, 94 B.R. 938, 949 (Bankr. W.D. Mich. 1989) ("In

8

previous bench opinions, given certain facts, this court has determined cause *may* include . . . failure to pay post-petition taxes respecting the property in which the creditor has an interest . . . .") (emphasis added); *Equitable Life Assurance Soc'y of the U.S. v. James River Assocs.* (*In re James River Assocs.*), 148 B.R. 790, 797 (E.D. Va. 1992). The cases differentiate between a debtor failing to make plan payments and a debtor failing to pay property taxes. Baker concedes as much. (R. 9, PID 420.)

Baker also argues that the bankruptcy court's cause determination did not account for her offer to pay her 2015 taxes by March 2018 and to continue making plan payments. She protests that the bankruptcy court gave "no consideration" to her assurances. (R. 8, PID 392–93.) But on some of Baker's properties, she is in arrears dating back to 2010. (R. 5, PID 250–54.) Given Baker's history of nonpayment, the Court sees no abuse of discretion in the bankruptcy court's decision not to credit Baker's assurances.

Moreover, the significance of property-tax payments to Wayne County supports the bankruptcy court's cause determination. As the Treasurer pointed out at oral argument, a failure to pay property taxes drains revenue from schools, roads, public utilities, and other essential services. Absent a tax foreclosure, the Treasurer has no way to secure payment on the unpaid taxes.

In sum, cause is a "broad and flexible concept." *In re Indian River Estates, Inc.*, 293 B.R. 429, 433 (Bankr. N.D. Ohio 2003). Determining whether cause exists

calls on a bankruptcy court to "balance the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *In re Nichols*, 440 F.3d at 856. The bankruptcy court did so, and found cause existed given the circumstances of Baker's case. Baker's arguments to the contrary do not establish the strong showing she needs to make, nor do they demonstrate any abuse of discretion on the part of the bankruptcy court.

**2.**

Baker next argues the bankruptcy judge erroneously applied § 362(d)(1) instead of § 362(d)(2). (R. 8, PID 401–02.) In relevant part, § 362(d) provides: ". . . the court shall grant relief from the stay provided under subsection (a) of this section. . . . (1) for cause. . . *or* (2) with respect to a stay of an act against property under subsection (a) of this section. . . ." 11 U.S.C. § 362(d) (emphasis added).

Baker points to *Gateway N. Estates v. Bailey*, 169 B.R. 379 (E.D. Mich. 1994). In that case, the district court reversed a bankruptcy court for applying § 362(d)(1) to a creditor's motion to lift the stay. *Bailey*, 169 B.R. at 381–82. Because the creditor wanted to foreclose on a piece of property, the district court said the bankruptcy court should have relied on § 362(d)(2), which applies to lifting "'a stay of an act against property.'" *Id.* at 381 (quoting 11 U.S.C. § 362(d)(2)). The district court remanded the case with instructions to the bankruptcy judge to apply §

362(d)(2). Baker says the bankruptcy judge made the same mistake here, and this Court should remand with similar instructions.

But *Gateway* seems to be an outlier. As § 362(d)'s plain language indicates, the statute is disjunctive. *See* 11 U.S.C. § 362(d). Bankruptcy courts acknowledged the statute's disjunctive structure before *Gateway*, *see, e.g.*, *In re MCM, Inc.*, 95 B.R. 307, 310 (Bankr. D. Del. 1988) ("Section 362(d) is written in the disjunctive and a ruling under one or the other of its subsections in favor of a movant is all that is required for relief."), as well as after, *see, e.g.*, *In re J&M Salupo Dev. Co.*, 388 B.R. 809, 811–12 (Bankr. N.D. Ohio 2008) (reasoning that a movant needs to demonstrate grounds for relief under § 362(d)(1) "and/or" (d)(2)). The statute's structure affords bankruptcy courts the option to analyze a motion to vacate the stay under (d)(1) or (d)(2). *Id.* Thus, the bankruptcy court did not err in applying § 362(d)(1).

**3.**

In sum, Baker has not shown that she is likely to succeed on the merits. The case law suggests Baker's failure to pay post-petition property taxes may amount to cause sufficient to lift an automatic stay, and *Nichols* is not contrary. Plus, § 362(d) is a disjunctive statute, so the bankruptcy court did not have to analyze (d)(2) once it found (d)(1) applied. Thus, Baker has not shown a "strong or substantial likelihood or probability of success on the merits." *Solomon*, 960 F.2d at 35.

**B.**

Next the parties address irreparable harm. Baker says irreparable harm is inevitable because with the stay lifted, she owes *all* of her back taxes and because she has no chance of paying them, she will lose her properties to foreclosure in March 2018. The Treasurer responds that a March 2018 foreclosure date proves that Baker does not face imminent harm, which is the type of irreparable harm that precludes lifting of the stay. (R. 10, PID 461–62.)[1]

But there is another overlooked issue. Baker admits the properties at risk of foreclosure are income-generating, rental properties. Thus, Baker's personal residence is not at issue here; she wishes to stave off the foreclosure of *commercial* properties. That fact mattered to the bankruptcy court. (R. 5, PID 336.)

As a baseline, the Sixth Circuit has long reasoned that the possibility of a future monetary damage award "weighs heavily" against a finding of irreparable harm. *Griepentrog*, 945 F.2d at 154 (citing *Samson v. Murray*, 415 U.S. 61, 90 (1974). Baker does not explain why monetary damages would not remedy any injury from the sale of commercial property. *See In re Richmond*, No. 14-41678, 2014 Bankr. LEXIS 4332, *10–11 (Bankr. E.D.N.Y. Oct. 10, 2014) ("Absent special circumstances, the sale of commercial property does not create an irreparable harm,

---

[1] Pursuant to Michigan's statutory scheme for property tax foreclosure, there is a near three-year time lag from the initial deficiency period (i.e., failure to pay) to the final sale of the property (during which the property owner has the opportunity to pay the taxes and redeem the property). *See* Mich. Comp. Laws §§ 211.78a to 211.78k.

since any harm due to the sale of the property or interference with the business can be remedied with monetary damages.") (internal quotations omitted). Baker makes no attempt to demonstrate "special circumstances." It is her burden to carry, and because she cannot do so, she cannot show irreparable harm. *See In re Gilbert*, 541 B.R. 415, 418–19 (Bankr. E.D. Mich. 2015).

Resisting that conclusion, Baker argues the properties are her nest egg, essentially her only retirement savings. While that argument resonates with the Court, it is not inconsistent with the efficacy of a future monetary damages award. These properties are her nest egg because they generate income from rentals and hopefully accrue equity. Money damages would seem well-suited to make her whole if she loses them to foreclosure.

Because Baker does not explain why an eventual award of monetary damages would fail to make her whole—or even why a foreclosure sale many months away in March 2018 constitutes imminent harm—she cannot show irreparable harm flowing from the Treasurer's foreclosure of her commercial properties.

**IV.**

Baker has made only a weak showing on both the likelihood-of-success and irreparable-harm factors. As those are the most "critical" factors, *Nken*, 566 U.S. at 434, the Court sees no reason to go any further.

Accordingly, Baker's motion for a stay pending an appeal is DENIED.

    IT IS SO ORDERED.

|  |  |
|---|---|
|  | s/Laurie J. Michelson |
|  | Laurie J. Michelson |
| Dated: December 5, 2017 | United States District Judge |